UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:25-mj-00021-1
)
MICHELLE J. ZAJKO, )
Defendant. )

**RESPONSE OF THE UNITED STATES IN OPPOSITION TO DEFENDANT'S MOTION TO SECURE HER PROMPT APPEARANCE OR, IN THE ALTERNATIVE, FOR AN ORDER TO SHOW CAUSE**

The United States of America, by and through its undersigned counsel, provides this response in opposition to the defendant's "Motion to Secure her Prompt Appearance or, in the Alternative, for an Order to Show Cause" (hereafter, the "Appearance Motion") filed on September 17, 2026, in the above-captioned case. (Doc. 4.) The Court should deny the Appearance Motion because no law, case, or rule provides for the relief the defendant seeks. As the defendant concedes, there has been no arrest on the pending federal Complaint, there has been no previous appearance in this District, and there is no current sentence of incarceration that the defendant is serving. The defendant therefore cannot identify a violation of the Federal Rules of Criminal Procedure, the Speedy Trial Act, or the Sixth Amendment and is not entitled to the relief sought in the Appearance Motion.

## I. Background

On February 18, 2025, a criminal Complaint—including a supporting affidavit attested to by a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)—was filed in the District of Vermont charging the defendant with violating Title 18, United States Code, Section 924(a)(1)(A) by knowingly making a false statement and representation to a Federal Firearms Licensee (FFL) in connection with her purchase of firearms.

(Doc. 1.) The Court also issued a warrant for her arrest on that date. ATF caused the warrant to be entered into the National Crime Information Center (NCIC) database so that it is accessible to all participating law enforcement organizations, and the warrant remains active in NCIC presently.

ATF also lodged a detainer with a state detention facility in Maryland where the defendant was detained in state custody at the time of the filing of the federal Complaint in the District of Vermont. At the time, the defendant had been in custody since February 16, 2025, while facing state criminal charges in Allegany County, Maryland. The defendant remains in Maryland state custody pending extradition proceedings relating to a homicide case later filed against the defendant in the Commonwealth of Pennsylvania. The defendant may be transferred to Pennsylvania state custody on those charges at the conclusion of extradition proceedings.

Based on the information currently available to the United States, the defendant has not been convicted of any crime during the relevant period and is not serving any imposed sentence of incarceration. Because the defendant was not released from state custody during that time, the detainer lodged by ATF has not been activated, and the federal arrest warrant has not been executed—that is, the defendant has not been arrested pursuant to the federal Complaint. The United States has, as of this filing, not petitioned for a writ of habeas corpus ad prosequendum to produce the defendant in the District of Vermont, electing to defer to authorities in Maryland and Pennsylvania to proceed with their prosecutions.

The defendant filed the Appearance Motion on September 17, 2026, after defense counsel filed his appearance in the case. The motion seeks to compel the United States to either produce the defendant in the District of Vermont for a prompt appearance or dismiss the federal Complaint. (Doc. 4, pp. 1, 6.) The defendant did not allege violations of the Federal Rules of

Criminal Procedure or the Speedy Trial Act, *id.* at 1, but instead asked the Court to require the United States to produce the defendant or dismiss the Complaint.

## II. Argument

The Appearance Motion does not ask the Court to dismiss the Complaint under Federal Rule of Criminal Procedure 48(b), which authorizes the Court to dismiss an indictment, information, or complaint upon a finding of unnecessary delay in seeking an indictment, filing an information, or bringing a defendant to trial. That is understandable, given that the Supreme Court has held that Rule 48(b) "clearly is limited to post-arrest situations." *United States v. Marion*, 404 U.S. 307, 319 (1971). Further, any relief under Rule 48(b) does not become available until "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge[.]" *Id.* at 320. Neither the filing of a formal charge (indictment or information) nor a federal arrest has occurred in this case, so the defendant could not seek a dismissal of the Complaint under Rule 48(b).

Instead, the defendant appears to invoke Rule 48(b) as a talisman justifying Court intervention with federal prosecution decisions while criminal proceedings are occurring in other jurisdictions. The defendant seeks to compel the United States to proceed immediately with the prosecution on the Complaint or to dismiss the Complaint despite the absence of a statutory or constitutional obligation for it to do so. The Second Circuit approved language in a Fifth Circuit case describing a federal criminal complaint as "merely a document on which action may or may not be taken. . . . The filing of a federal complaint does not, in the absence of a federal arrest in connection with that complaint, trigger the time requirement of 3161(b)." *United States v. Bloom*, 865 F.2d 485, 491 (2d Cir. 1989) (quoting *United States v. Johnson*, 815 F.2d 309, 312 (5th Cir.1987), *cert. denied*, 484 U.S. 1068 (1988)). The Second Circuit held in *Bloom* "that the

filing of a federal complaint without concurrent action depriving a defendant of liberty for the purpose of facing charges is insufficient to trigger the Speedy Trial Act's timing provisions." *Id.* In this case, the defendant has not been deprived of liberty based on the federal Complaint, arrest warrant, or lodged detainer; because the defendant has remained detained in pending state criminal proceedings, no federal action has been triggered despite the filing of the Complaint in the District of Vermont. The defendant has not identified any legal or constitutional burden of the United States to commence proceedings in the current procedural posture.

Because no federal arrest has occurred, the defendant's remedies for alleged delay lie in the federal statute of limitations applicable to the case, which is "the primary guarantee against bringing overly stale criminal charges[,]" *Marion*, 404 U.S. at 322 (quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)), and in the Due Process Clause, which requires dismissal only where the defendant carries the "heavy burden" of proving both actual prejudice to the defendant's ability to present a defense and delay "intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999); *see Marion*, 404 U.S. at 324–25. The defendant does not assert that the limitations period, as defined in 18 U.S.C. § 3282(a), has expired. The defendant also does not assert either that the decision of the United States to not yet pursue an indictment or an initial appearance on the Complaint has prejudiced a potential defense in the case or that the decisions have been for any improper purpose. Accordingly, the defendant cannot articulate a legal basis for the relief requested in the Appearance Motion.

"[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016); *see* Fed. R. Crim. P. 57(b) (a judge may regulate practice "in any manner

consistent with federal law, these rules, and the local rules of the district"). *Dietz* forecloses the remedy the defendant seeks based on a Rule 48(b)-adjacent argument about the inherent supervisory capacity of the Court. The Rule is itself "a restatement of the inherent power of the court to dismiss a case for want of prosecution." Fed. R. Crim. P. 48 advisory committee's note to 1944 adoption. *Marion*'s limitation applies to both the Court's inherent power and to the Rule. Because the defendant has neither been arrested on the Complaint nor been brought before this Court for an Initial Appearance on the Complaint, there is no post-arrest delay for the Court to supervise and remedy.

The defendant relies principally on *United States v. Huntley*, 976 F.2d 1287 (9th Cir. 1992), to assert that this Court has authority to compel the United States to seek the defendant's appearance or dismiss the Complaint. That reliance is misplaced. *Huntley*'s facts resemble this case—at least insofar as the defendant had been named in a federal criminal complaint, but was not yet indicted, and was subject to an unexecuted arrest warrant and detainer for several months during the pendency of state proceedings—but its holding favors the United States as to the Appearance Motion. In *Huntley*, federal prosecutors filed a complaint against a state parolee in January 1989 and obtained an arrest warrant, but the warrant "was not served," and Huntley remained in state custody while his parole revocation proceeded. *Id.* at 1289. The prosecutor explained that "rather than pulling him out of state custody and having him go back and forth we waited until he came in on our writ" before indicting him in July 1989. *Id.* The Ninth Circuit found that there was no "prosecutorial misconduct in allowing the state proceedings to be completed before initiating the federal proceedings. That was an executive policy judgment in the exercise of prosecutorial discretion with which a judge might disagree, but which could not be characterized as misconduct. Availability of prosecution by another jurisdiction is a

traditionally recognized ground for the exercise of discretion not to prosecute." *Id.* at 1292. The Ninth Circuit vacated the district court's dismissal of the indictment pursuant to Rule 48(b) and due process concerns. *Id.* at 1293. Contrary to the defendant's premise, *Huntley* held that a Rule 48(b) dismissal "should be imposed only in extreme circumstances," and that dismissal requires "findings of prosecutorial misconduct and actual prejudice to the accused." *Id.* at 1291-92.

*United States v. Clay*, 481 F.2d 133 (7th Cir. 1973)—cited in *Huntley* and by the defendant—is further afield from the present case. In that case, Clay was federally arrested, posted bond, and waived a preliminary hearing before the eight-month pre-indictment delay at issue. Accordingly, Clay had been "held to answer," the textual trigger of Rule 48(b) as it then read. *Id.* at 134, n.1. The Seventh Circuit reversed the Rule 48(b) dismissal. *Id.* at 138. The sentence the defendant quotes in the Appearance Motion about cases "completely inactive for prolonged periods" was a general description of a court's calendar-control power. The *Clay* court actually held that "if no unusual circumstances are shown, past delay does not justify dismissal" and that "[t]here were no special circumstances in this case which called for the exercise of judicial discretion." *Id.* at 137–38.

"[T]he Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *United States v. Lovasco*, 431 U.S. 783, 790 (1977). "[R]equiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest." *Id.* at 794. The Second

Circuit applies these principles to the timing of a charging decision. In *United States v. Hoo*, 825 F.2d 667 (2d Cir. 1987), for example, the court declined to subject "the timing of a decision to prosecute" to pre-indictment judicial inquiry, observing that a rule requiring prompt charging would "pressure prosecutors into resolving doubtful cases in favor of early and possibly unwarranted prosecutions." *Id.* at 670–71 (quoting *Lovasco*, 431 U.S. at 793). The Second Circuit has likewise reaffirmed, in limiting a district court's supervisory power, that "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings . . . or whether to dismiss a proceeding once brought.." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 138 (2d Cir. 2017) (quoting *United States v. Ross*, 719 F.2d 615, 620 (2d Cir. 1983)). Contrary to these principles, the defendant requests the Court to intervene and compel the United States to either proceed with its prosecution presently or dismiss its criminal Complaint. The Court should decline to do so.

The decision to bring a prisoner from one sovereign to another falls within the purview of the Executive Branch. "One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that." *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922). Whether one sovereign will waive its right to exclusive custody so that the other may proceed "is a matter that addresses itself solely to the discretion of the sovereignty making it," and, in the federal system, "the power and discretion to practice the comity in such matters between the federal and state courts is vested" in the Attorney General. *Id.* at 262; accord *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980) ("Determination of priority of custody . . . between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns. . . This discretionary

election is an executive, and not a judicial, function."). In this case, the State of Maryland held and holds primary custody of the defendant, who is now pending potential extradition to the Commonwealth of Pennsylvania on serious charges. The Second Circuit has held that "successive state and federal prosecutions are constitutionally permissible" and found "no reason to fault the government" for delay in federal prosecution attributable to a defendant's pending state proceedings. *United States v. Mejias*, 552 F.2d 435, 441-42 (2d Cir. 1977). Other circuits agree. *See, e.g.*, *United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) ("Simply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay."); *United States v. Garcia*, 59 F.4th 1059, 1065, 1067 (10th Cir. 2023) (twenty-three-month delay between sealed indictment and federal arrest while defendant was in state custody was "permissible").

The remaining authorities invoked by the defendant in the Appearance Motion establish only that a petition for a writ of habeas corpus ad prosequendum is available to the United States; none of the cited authorities suggests that the Court may direct the Government to petition for such a writ. In *Carbo v. United States*, 364 U.S. 611, 618–21 (1961), the Supreme Court recognized only that a district court has jurisdiction to issue the writ, on the Government's application, to a custodian outside the district. In *Lugo v. Hudson*, 785 F.3d 852, 855 (2d Cir. 2015), the Second Circuit described the writ's implication in a sentencing computation context but did not announce any duty of the United States to petition for a writ. In *United States v. Mauro*, 436 U.S. 340 (1978), the Supreme Court held that the writ alone is not a detainer under the Interstate Agreement on Detainers (IAS), *id.* at 361, but the IAD is not implicated in the present case.

## III. Conclusion

The defendant's detention in the State of Maryland has been based on alleged violations of state law in Maryland and Pennsylvania, and at no point has that detention been predicated upon the existence of the federal criminal Complaint in the District of Vermont, the resulting arrest warrant, or any detainer filed by a federal law enforcement authority. The defendant has alleged neither any substantive prejudice resulting from the lack of execution of the federal arrest warrant or from any other delay in federal proceedings nor any improper motive in the decision of the United States to defer to state prosecution. Accordingly, the United States respectfully requests the Court deny the Appearance Motion without a hearing.

Dated at Burlington, in the District of Vermont, October 1, 2026.

Respectfully submitted,

JONATHAN A. OPHARDT
First Assistant United States Attorney

By: /s/Matthew J. Lasher

Matthew J. Lasher
Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725